# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BRENDA BOWEN,**

                    **Plaintiff,**

-vs-                                                          **Case No.  6:09-cv-1849-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

                    **Defendant.**
_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for disability insurance benefits under the Act.  The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

## *I.  BACKGROUND*

### A.    Procedural History

Plaintiff filed for a period of disability and disability insurance benefits on March 9, 2006. R. 59-64.  She alleged an onset of disability on May 17, 2004, due to depression, neck problems, left leg pain, lower back pain, numbness in the arms and hands, left knee pain, and swelling in her knees

and feet.  R. 59, 77, 317-19.  Her application was denied initially and upon reconsideration.  R. 45-49.

Plaintiff requested a hearing, which was held on February 23, 2009, before Administrative Law Judge

Gerald F. Murray (hereinafter referred to as "ALJ").  R. 312-26.  In a decision dated March 20, 2009,

the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision.  R. 8-

19.  Plaintiff timely filed a Request for Review of the ALJ's decision (R. 7), which the Appeals

Council denied on August 27, 2010.  R. 4-6.  Plaintiff filed this action for judicial review on October

30, 2010.  Doc. 1.

> ### B.      Medical History and Findings Summary

Plaintiff who was born in July 1965 (Tr. 59), was 43 years old on the date of the hearing

decision (Tr. 8-19, 59). She completed the twelfth grade, attended community college, and has past

relevant work as a truck sales person (Tr. 66, 314-16).

Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary,

Plaintiff complained of depression, neck problems, left leg pain, lower back pain, numbness in the

arms and hands, left knee pain, and swelling in her knees and feet.  R. 59, 67, 77, 317-19.  After

reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered

neck to low back pain, degenerative disc disease, and right knee pain, which were "severe" medically

determinable impairments, but were not impairments severe enough to meet or medically equal one

of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R. 13, 14.  The ALJ

determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, as she

could lift twenty pounds occasionally and 10 pounds frequently, and sit six hours in an eight-hour

workday, and could stand and walk for 4 hours in an 8 hour day with frequent periods of rest with

limitations in push/pull abilities.  R. 14.  She was able to frequently balance and climb ramps/stairs,

and never climb ladders, ropes, or scaffolds; she could occasionally stoop, kneel, crouch and crawl;

and she had to avoid concentrated exposure to vibrations, fumes, odors, dusts, gases, poor ventilation, and hazards.  R. 14.  The ALJ also gave Plaintiff the benefit of the doubt due to moderate impairment in concentration, persistence or pace due to her pain.  R. 14.

In making the RFC determination, the ALJ found that Plaintiff's allegations regarding her limitations were not credible to the extent they are inconsistent with the RFC determination for the reasons set forth in the body of the decision.  R. 17.  Based upon Plaintiff's RFC, the ALJ determined that she could not perform past relevant work.  R. 18.  Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as ticket seller, merchandise price-marker, and apparel stock checker.  R. 18-19.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  R. 19.

Plaintiff now asserts three points of error.  First, she argues that the ALJ erred by relying upon vocational expert (VE) testimony that was based on an incomplete hypothetical.  Second, Plaintiff contends the ALJ erred by not finding she had the severe impairment of obesity.  Third, she asserts that the ALJ erred by improperly applying the pain standard and in evaluating her credibility.   All issues are addressed, though not in the order stated by Plaintiff.  For the reasons that follow, the decision of the Commissioner is the decision of the Commissioner is **REVERSED** and **REMANDED**.

## II.  STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings

are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's

impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).

## III.  ISSUES AND ANALYSIS

### A.    Obesity

Plaintiff argues that the medical evidence reflected obesity and the ALJ erred in failing to consider obesity's impact in "significantly limiting her ability to perform basic work activities.  The Commissioner contends that Plaintiff never alleged in any disability application documents or at the administrative hearing that she was disabled due to obesity, she failed to cite any medical diagnosis of obesity, and she failed to show that alleged obesity related to any functional limitations that were not incorporated in the ALJ's RFC finding.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe.  A severe impairment is an impairment which significantly limits a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 404.921(a); *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987).  By definition, this inquiry is a "threshold" inquiry.  It allows only claims based on the most trivial impairments to be rejected. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.  A claimant need show only that her impairment is not so slight and its effect not so minimal.  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

Plaintiff asserts the ALJ erred by failing to address whether her obesity was a severe impairment.  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986).  Plaintiff points to her

testimony that she was 5'5" and weighed 200 pounds at the time of the hearing. R. 323.  Several

times, including at the consultative examination, it was noted that the claimant weighed 200 pounds

or more.  R. 210, 283, 286, 287, 289, 290. Although Plaintiff concedes that there were times, around

the beginning of 2006 that Plaintiff did weigh considerably less, around 165 pounds. R. 297, 299, 301.

From July 2006, Plaintiff's weight began to increase when she weighed 181 pounds, and it continued

to climb from there sot that, as of July 13, 2006, her body mass index was 30, and when she weighed

around 200 pounds it was up to approximately 33.  R. 296. Plaintiff contends that a body mass index

of "30 or greater equals obesity," *Brown v. Barnhart*, 325 F.Supp.2d 1265, 1271-72 (N.D. Ala. 2004),

and the ALJ's failure to consider such obesity was error.

The Commissioner argues that obesity was not a medically determinable impairment that the

ALJ needed to address because Plaintiff never alleged in any disability application documents or at

the administrative hearing that she was disabled due to obesity and she does not cite to any evidence

that any acceptable medical source diagnosing her with obesity. The Commissioner also argues that,

even if Plaintiff had been diagnosed with obesity, she has not shown that her alleged obesity related

to any functional limitations that were not incorporated in the ALJ's RFC finding.  The Commissioner

argues that Plaintiff is essentially arguing that the ALJ should have made his own diagnosis of

obesity, despite the lack of a definitive diagnosis from a medical source, which is contrary to

regulations which require evidence from an acceptable medical source to establish that a claimant has

a medically determinable impairment. 20 C.F.R. § 404.1512(a).   The Commissioner contends that

an ALJ cannot diagnose conditions ordinarily done by a doctor, and simply because a claimant has

a body mass index  or weighs a certain amount does not mean the person has work-related limitations.

Doc. 13 (citing Social Security Ruling 02-1p (there is not always a correlation between BMI and

excess weight).  The Commissioner also argues that the ALJ made no error because he found certain

severe impairments (of neck to low back pain, degenerative disc disease, and right knee pain – R. 13) at Step Two and continued on to the rest of the sequential evaluation process.

In this case, the ALJ's decision reflects that he fully considered Plaintiff's diagnosed and alleged impairments in combination. Plaintiff never alleged that she had any work related restrictions from obesity and none of the physicians precluded Plaintiff from working due to obesity or made a diagnosis of obesity. There is nothing in the record to indicate, and Plaintiff does not state what additional limitations on her ability to work she suffered because of obesity that the ALJ did not consider. The ALJ's failure to include obesity as a severe impairment of Plaintiff's was based on substantial evidence.

### B.     Pain and credibility

Plaintiff asserts that the ALJ erred in evaluating her pain by finding that she was credible only to the extent her alleged impairments were inconsistent with the residual functional capacity as outlined by the ALJ when the record clearly revealed that she suffered from documented impairments causing severe pain and limitations. She argues that the ALJ focused on certain statements of Plaintiff, and not her entire testimony. The Commissioner argues that the ALJ's discounting of Plaintiff's credibility was based on substantial evidence.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments

is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not

inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The ALJ must consider all of a claimant's statements about his symptoms, including pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent with the

objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and

laboratory findings show medical impairments which reasonably could be expected to produce the

pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either
> (2) objective medical evidence that confirms the severity of the alleged pain arising
> from that condition or (3) that the objectively determined medical condition is of such
> a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone

can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*,

957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself,

conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

Plaintiff argues that her complaints of chronic, debilitating pain are substantiated in the record

by her many doctors' visits, use of pain medications and other pain modalities such surgery, epidural

blocks and diagnostic tests, *i.e.*, x-rays and MRIs.  Plaintiff argues that at no time did the treating

physicians indicate that she should not be experiencing pain or that she was exaggerating her

symptoms.  Plaintiff also argues that the ALJ should not have based his decision in part on her ability

to participate in abbreviated activities because everyday activities of short duration, such as

housework or fishing, does not disqualify a claimant from disability.  The ALJ found that Plaintiff was

capable of performing "many activities of daily living, such as taking care of her two young children,

driving, doing laundry and preparing simple meals," and this "reflects negatively on her credibility." R. 16.  Plaintiff argues the ALJ completely ignored other testimony that she was impaired in performing them; she testified that she wakes her children and takes them to school, but comes back home and lays down in bed the rest of the day until it is time to pick up the children from school; she does not even take a shower everyday because she does feel well; if she goes grocery shopping, she takes her children so she does not have to lift anything; and she does "light laundry" one time a week. R. 320-21, R. 68.  Plaintiff cites *Vennette v. Apfel*, 14 F.Supp.2d 1307, 1314 (S.D. Fla. 1998) for the principle that "housework, light cooking and light grocery shopping are minimal daily activities and "are not dispositive evidence of one's ability to perform sedentary work in a Social Security case."

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p.  R. 14-15.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied").  The ALJ complied with the appropriate standards. He obviously determined that plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination.  In that respect, immediately after discussing Plaintiff's RFC, the ALJ stated:

> The claimant's allegations include being unable to work due to degenerative disc disease (DDD), back disorder, neck pain, right knee, hip pain, asthma, carpal tunnel syndrome, and anxiety/depression.  The claimant testified she had neck surgery after a car accident and also received injections in her back to help with her pain.  She

stated that these injections only caused her more problems. She also testified that she has right knee pain and degenerative disc disease. She also stated that she had never been to vocational rehabilitation and has problems walking. She testified that she has constant pain in her lower back and mostly stays in bed because sitting in a chair causes her legs to tingle. She further testified that due to the lower back pain and hip problems she has pain for almost the entire day and doing activities makes the pain worse. She further testified that she is only able to stand for 15 minutes, walk ½ a block, sit for an hour and lift a gallon of milk. The claimant also testified that for her activities of daily living she gets up at 6 a.m. and helps her two children, ages 9 and 13, get ready for school. She further stated that if she feels okay she will take them to school. She testified that she watches TV and sleeps until it is time to pick them up from school. The claimant reported that she feeds her children easy, simple pre-made meals. The claimant also reported that she is able to do laundry, drive, shop, handle money, and socialize. The undersigned gives some weight to the claimant's testimony, but notes that the claimant stated she is unable to do many things and stays in bed for most of the day; however, she is able to do many activities of daily living such as taking care of her two young children, driving, doing laundry and preparing simple meals. The undersigned notes that the claimant's allegations of severity exceed her capabilities and reflects negatively on her credibility.

In terms of the claimant's alleged DDD and neck to lower back pain, Stephanie [sic] Lavoie, M.D., evaluated the claimant from March 11, 2004 to November 18, 2005. [He] gave the following impression: cervicalgia, herniated nucleus pulposus at C4-5 and C5-6, left upper extremity pain, and cervical spasms. Dr. Lavoie conducted a magnetic resonance imaging (MRI) of the cervical spine that revealed that the claimant had two level disc degeneration at C4-5 and C5-6, that there was a protrusion to the left at C4-5 and C5-6, at the C5-6 level there was spinal cord indentation on the left, at C4-5 there was some spinal cord indentation but more foraminal narrowing to the left at C6-7, and there was some disc degeneration noted at C4-5 and C5-6. The claimant underwent a cervical diskectomy and effusion, and Dr. Lavoie opined that x-rays of the cervical spine revealed good position of the hardware and grafts. Dr. Lavoie further opined that the claimant was doing well, had no pain in her neck and was at full strength to her upper extremities. In 2005, the claimant was involved in a car accident where she underwent her second spine surgery or psudarthrosis [sic] repair of the C5-6. Dr. Lavoie later opined that the claimant was recovering well and that the x-rays of the cervical spine revealed that the fusion was solid and the hardware was intact. Dr. Lavoie's assessment is objective evidence that claimant's allegations of her impairments exceed the actual severity of them. . . .

Glenn I. Kolluri, M.D., conducted an electromyography (EMG) on the claimant on July 13, 2005; the claimant told him that she had a history of cervical spine surgery. Dr. Kolluri gave the following impression: the above electrodiagnostic study revealed no evidence of denervation or reinnervation potentials to suggest an ongoing electrical cervical motor radiculopathy. Dr. Kolluri's assessment is objective evidence that claimant's allegations exceed the severity.

* * *

Michael P. Doyle, D.O., administered a radiology consultation on the claimant's lumbar spine on February 2, 2007.  He gave the following impression: no acute bony abnormality and a large amount of debris on left colon.  He stated that the examination revealed normal body alignment, the mineralization appeared unremarkable, and acute bony abnormality was not present.  The undersigned notes that this objective evidence is further evidence that claimant's allegations exceed the severity because Dr. Doyle noted that the claimant's lumbar spine appeared to be normal.

* * *

N. Kirmani, M.D., on behalf of Disability Determination Services evaluated the claimant on February 3, 2007. . . . Dr. Kirmani also stated that the claimant indicated she was able to go to the store by herself, she was able to prepare meals, she was active in her church and she talked on the phone with her friends and family and was able to take care of all of her personal grooming needs.  The undersigned gives great weight to the opinion of Dr. Kirmani, since it was well supported and consistent with the medical evidence of record.  In addition, the claimant's comments to Dr. Kirmani regarding her ADLs showed that the claimant's allegations were not as severe as she alleged and therefore lacks credibility.

R. 16-17.

In this case, the ALJ offered very specific reasons for discrediting Plaintiff's subjective complaints.  The ALJ's reasons included inconsistencies between her reports and the examination findings and objective medical evidence, as well as inconsistencies between her statements and her activities of daily living.  These are factors the ALJ is directed to consider.  20 C.F.R. §§ 404.1529; 416.929.

The Commissioner cites some of the inconsistent statements regarding her activities of daily living stated by Plaintiff at the hearing and to Dr. Kirmani during the consultative examination. Plaintiff testified that she stays in bed seven hours a day, but informed the ALJ that she gets up at 6:00 a.m. to drive her nine year old daughter to elementary school and drives her 13 year old son to school at 9:00 a.m.  R. 317-20.  She also picks up her children from school, helps them with their homework and feeds the children.  R. 70 (Feb. 17, 2007).  Plaintiff testified that the only chore she can do is

laundry and that she cannot sit at church because it hurts her lower back and knees (R. 72); however she told Dr. N. Kirmani on February 3, 2007, that she is active in church, prepares meals, and washes dishes.  R. 217.   Plaintiff also testified that she has not visited with friends or relatives in two years (R. 320), but informed Dr. Kirmani that she visits with friends, family, and gets along with them.  R. 217. Plaintiff testified that she only watches television in bed, but informed Dr. Kirmani that she listens to music, reads magazines, watches movies, uses her cell phone and house phone to talk to friends and family, and takes care of all of her grooming needs.  R. 217.   Additionally, despite complaints of neck pain and bilateral arm tingling, Plaintiff was able to go bowling, which aggravated her condition.  R. 258.  Her lower back pain was aggravated by lifting her mother-in-law when she was ill.  R. 265.  Her right knee pain flared up after spending the day at a Disney theme park.  R. 289. Most notably, she told Dr. Mamone that "she was getting [activities of daily living] done – but she had to push herself.  R. 301.

        As the ALJ covered in extensive detail in his decision, the reports of Plaintiff's treating physicians and the results of objective testing were also inconsistent with Plaintiff's complaints of pain.  Dr. Stephane Lavoie treated Plaintiff from March 2004 to April 2007 (Tr. 241-77). After performing a cervical diskectomy and effusion on April 15, 2004, Dr. Lavoie stated that Plaintiff was doing well, and X-rays of her cervical spine revealed good position of the hardware and grafts, and motor examination was normal.  R. 269.  Dr. Glenn Kolluri, who conducted an electromyography (EMG) on July 13, 2005, reported that the electrodiagnostic study failed to reveal any evidence of denervation or reinnervation potentials to suggest ongoing electric cervical motor radiculopathy.  R. 87.

After Plaintiff was involved in a motor vehicle accident in August 2005 (R. 108-12), Dr. Lavoie performed a second cervical spine surgery on Plaintiff to repair C5-C6 disc and broken screws; he later opined that she was recovering well. R. 254.

On November 7, 2005, when Plaintiff presented to Dr. Amune at Florida Hospital for a treatment of radiofrequency lumbar denervation, Dr. Amune noted:

> [O]n examination today the patient demonstrated multiple superficial thrombophlebitic veins consistent with needle puncture and intravenous drug use, upper and lower extremities. She claimed this was from insect bites due to working in the yard, but this was not consistent. Of note, the patient has been arrested for possession of drug paraphernalia and this was published in the local newspaper.

R. 107. Dr. Amune said he intended to discuss Plaintiff's case with Dr. Mamone, her primary care physician who would be administering further treatment. R. 107. Exactly eleven days later, on November 18, 2005, she saw Dr. Lavoie following the second neck surgery and the graft appeared to be healing nicely. R. 252. He said at that time that Plaintiff "continues to have some discomfort in her back for which she sees Dr. Amune." R. 252. There are no subsequent records from Dr. Amune. Dr. Mamone's records indicate that Plaintiff was seen in December 2007 because her oxycodone and oxycontin were stolen. R. 279. Plaintiff complained of pain in her back and right leg and requested a referral to pain management but not to Dr. Amune. R. 279, 280. Plaintiff testified at the hearing that her neck, since the second surgery, was "95% resolved." R. 319. Dr. Hopkins performed a consultative examination on January 31, 2007, finding that the range of motion of Plaintiff's upper extremities was grossly intact and good strength was noted. R. 210. February 2, 2007 radiology report of Dr. Doyle states that Plaintiff's lumbar spine x-ray showed normal bony alignment and unremarkable mineralization and acute bony abnormality was not present R. 212.

Dr. Reed, who performed a carpal tunnel release in 2007, reported that Plaintiff did well one week out of carpal tunnel release and moved her fingers well, and following an arthroscopy of

Plaintiff's right knee in October 2006, she was doing well.  R. 241-44, 246.  Plaintiff testified at the hearing that her hands, since the carpal tunnel releases, were okay most of the time, except when it was cold outside.  R. 323.

The ALJ's opinion contrasted specific details of Plaintiff's objective medical test results and her reports of daily activities in finding her complaints of pain to be not fully credible.  Accordingly, the ALJ's reasons are supported by substantial evidence.

### C.   Hypothetical to the VE

Plaintiff claims that the ALJ erred in relying on the testimony of the VE after posing a hypothetical question that did not adequately reflect Plaintiff's limitations and after the VE testified that there was no way of knowing the number of available jobs based on a sit/stand option.   The Commissioner argues that the RFC limitations included in the hypothetical are not inconsistent with light work.  Doc. 13.

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *Foote*, 67 F.3d at 1558.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the "grids."  *Foote*, 67 F.3d at 1558.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

In this case Plaintiff suffered from the nonexertional impairment of pain.  Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987).  In almost all of such cases, the Commissioner's burden can be met only through the use of a VE.  *Foote*, 67 F.3d at 1559.

To assist the ALJ in determining whether Plaintiff could perform other work, the ALJ obtained testimony from the VE.  R. 323-24.  The ALJ's decision states:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by [the grids].  However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled light occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as: 1) ticket seller . . . 2) merchandise price marker . . . 3) apparel stock checker.

R. 19.

Plaintiff contends that there are significant problems with the testimony of the vocational expert, most importantly because the ALJ did not include all of the limitations of the claimant. She argues that in spite of the fact that the ALJ added many limitations to Plaintiff's residual functional capacity to perform light work, he failed to include these additional limitations in the hypothetical. The ALJ found that Plaintiff was able to sit for 6 out of 8 hours; able to stand and walk for 4 hours in an 8 hour day with frequent periods of rest but had the additional limitations in her upper extremities in her push/pull abilities; is able to frequently balance and climb ramps/stairs; must never climb ladders/ropes/scaffolds; can occasionally stoop, kneel, crouch, and crawl; should avoid concentrated exposure to vibrations, fumes, odors, dusts, gases, poor ventilation, and hazards; and has moderate impairment in concentration, persistence, or pace due to her pain. R. 14.

The case law in this Circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

The VE testified at the beginning of the hearing as to Plaintiff's past relevant work as a truck salesperson, which was a light-duty job and skilled. R. 314. There was no dispute from Plaintiff that the truck sales position summed up her past relevant work for the last 15 years (R. 315), and the ALJ then heard testimony from Plaintiff about her impairments and limitations. Following her testimony, the ALJ asked the VE whether the truck sales position would accommodate a sit/stand option, and the VE replied that it would not. R. 323. The ALJ then posed a hypothetical asking for examples of some positions allowing "a moderate impairment in concentration, unskilled or semi-skilled, light work that would accommodate such a [sit/stand] option." R. 323. The VE responded: "Yes, I can. *At light-duty, unskilled, SVP2*, all of these will be – have that classification." R. 323. He gave the examples of ticket seller, merchandise price marker, and apparel stock checker, along with the numbers of the jobs in the national and local economies. R. 323-24 (emphasis added). Notably missing from the VE's restatement of the hypothetical is the "sit-stand" option.

Plaintiff's representative picked up on the omission and asked the VE: "It's my understanding, that the DOT does not specify jobs with sit/stand options," to which the VE responded, "Correct." R. 324. She followed up by asking "[T]he jobs that you've listed here for us, those are employee accommodations, is that correct? . . . [E]mployer accommodations for an employee?" and the VE agreed. R. 324. Plaintiff's representative asked "[H]ow would you know for sure, for instance, these

Ticket Seller positions of 50,000, that all 50,000 of these positions would be accommodated by these employers to allow a sit/stand option?"  R. 324.  The VE answered that in his opinion, all 50,000 positions would not allow a sit/stand option.  R. 324.  "It just depends on your employer, and the policy of the company."  R. 325.  Plaintiff's representative then asked, "So, is it fair to say that an unknown number of these jobs would be accommodated?"  R. 325.  The VE testified, "Correct.  It's going to change from – that number's going to change from one day to the next day."   R. 325.

Plaintiff correctly points out that the ALJ did not include the limitation of requiring "frequent periods of rest," which could be a significant limitation on what is meant by a sit/stand option - but it was not specifically discussed with the VE or explained by the ALJ. Moreover, the limited use of her upper extremities in her push/pull abilities; the inability to climb ladders/ropes/scaffolds; the ability to only occasionally stoop, kneel, crouch, and crawl; and the requirement to avoid concentrated exposure to vibrations, fumes, odors, dusts, gases, poor ventilation, and hazards were definitely not included in the hypothetical to the vocational expert even though they were part of the RFC the ALJ assigned to Plaintiff.  She argues that it is not clear the VE would have opined that the jobs of ticket seller, merchandise price-marker, and apparel stock checker could actually be performed with these other limitations.

The Commissioner argues that the RFC limitations determined by the ALJ are not inconsistent with light work, citing SSR 83-14[1]; thus, the ALJ's RFC finding was not inconsistent with the hypothetical question posed to the VE.  The Commissioner argues that some of the exertional limitations included by the ALJ in Plaintiff's RFC do not erode the light occupational base, according to SSR 83-14, and were not required to be asked of the VE, given the SSA's standing ruling.  According to SSR 83-14:

---

[1]http://www.socialsecurity.gov/OP_Home/rulings/di/02/SSR83-14-di-02.html (Feb. 1, 2011).  The Commissioner's cite was outdated and no longer available as a link.  Doc. 13 n.3.

> After it has been decided that an impaired person can meet the primary strength requirements of sedentary, light, or medium work – sitting, standing, walking, lifting, carrying, pushing, and pulling – a further decision may be required as to how much of this potential occupational base remains, considering certain nonexertional limitations which the person may also have. . . . *Relatively few jobs in the national economy require ascending or descending ladders and scaffolding.* . . . There are nonexertional limitations or restrictions which have very little or no effect on the unskilled light occupational base. *Examples are inability to ascend or descend scaffolding, poles, and ropes.*

SSR 83-14. Thus, the ALJ's failure to include Plaintiff's inability to climb ladders, ropes, or scaffolds did not make the hypothetical incomplete, as this limitation has "very little or no effect on the unskilled light occupational base."

The ALJ also did not include the limitation of occasional stooping, kneeling, crouching, and crawling. The Commissioner also points to SSR 83-14 as stating that lifting or carrying objects implies that a person can do occasional bending of the stooping kind and crouching – bending both the back and the legs and, in order to perform substantially all of the exertional requirements of most light jobs, Plaintiff would not need to crouch and would only need to stoop occasionally. SSR 83-14 states, "Two types of bending must be done frequently (from one-third to two-thirds of the time) in most medium, heavy, and very heavy jobs because of the positions of objects to be lifted, the amounts of weights to be moved, and the required repetitions. They are stooping (bending the body downward and forward by bending the spine at the waist) and crouching (bending the body downward and forward by bending both the legs and spine). *However, to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job).* . . . There are nonexertional limitations or restrictions which have very little or no effect on the unskilled light occupational base. Examples are . . . inability to crawl on hands and knees." SSR 83-

-18-

14 (emphasis added).  Thus, the ALJ's failure to include the "occasional stooping, crouching and kneeling" in the hypothetical that was restricted to the category of light work  was not error.

    The Commissioner also contends that SSR 83-14 states environmental restrictions–in this case the need to avoid concentrated exposure to vibrations, fumes, odors, dusts, gases, poor ventilation, and hazards (R. 14) – would not significantly affect the potential unskilled light occupational base.  According to SSR 83-14, environmental restrictions would not significantly affect the potential unskilled light occupational base.  SSR 83-14 ("functional ability may not be impaired by an environmental restriction (e.g., a person may be able to do anything so long as he or she is not near dangerous moving machinery, on unprotected elevations, or in contact with certain substances to which he or she is allergic)."  The ALJ's failure to include no exposure to certain environmental conditions within the hypothetical was not error, as this limitation does not affect the unskilled light occupational base[2].

    However, although the ALJ's RFC finding included a limitation that Plaintiff could stand and walk for 4 hours out of 8 "with frequent periods of rest," the ALJ did not explicitly include this limitation as worded in his RFC finding within the hypothetical to the VE.  The Commissioner argues – without citation to any SSR or court authority – that the sit/stand option included in the hypothetical question incorporated the ALJ's "frequent period of rest" finding.  A limitation of "frequent periods of rest" is not necessarily the equivalent of "having the option to continue working, except while choosing to sit," which a "sit/stand option" on its face implies.  As other courts have recognized, a sit/stand option usually refers to "a *work station* [that] will allow work to be performed from a seated

---

[2]The Commissioner also analyzes the DOT sections cited by the VE, and argues that none of the jobs identified by the VE require stooping, kneeling, crouching, crawling, balancing, climbing ramps/stairs, or environmental restrictions, citing *Selected Characteristics of Occupations (SCO)*, U.S. Department of Labor, DOT § 211.467-030, 1991 WL 671853 (ticket seller); § 209.587-034, 1991 WL 671802 (merchandise price marker); and § 299.667-014, 1991 WL 672642 (apparel stock checker).  Because the Court relies on SSR 83-14, of which the ALJ is presumably aware, it does not reach the propriety of the Commissioner asserting its own analysis for the ALJ's.

position or a standing position, at the worker's option. *See, e.g., Leach v. Commissioner,* Case No. 1:10-cv-67-JAW, 2010 WL 5366300, 3 (D. Me. Dec. 21, 2010) (emphasis added) (finding sit/stand option was "not the same as having freedom to frequently alternate position and possibly adjust a work station throughout the work day").

In this case, the ALJ's hypothetical did not clearly include all of the limitations he imposed – post-hearing – in determining Plaintiff's RFC, most notably, the ability "to stand and walk for four hours in an eight hour day with frequent periods of rest." R. 14.  As such, the ALJ's decision was not based on substantial evidence and must be remanded[3].  *See Leach*, 2010 WL 5366300 at *3 (finding the ALJ's post-hearing RFC finding of "at will" flexibility at the light work level was not the same as and did not line up with the VE's hearing testimony when asked about a "sit/stand option" and reversing and remanding "where it would have been simple for the ALJ to make the matter clear in his questioning"); *cf. Smith v. Astrue*, Case No. Civ. S-06-2373-DAD, 2009 WL 928323, 9 (E.D. Cal. Apr. 6, 2009) (reversing where ALJ's RFC finding for sedentary level with the need for a sit-stand option every 30-45 minutes did not take into account one physician's opinion that plaintiff needed "frequent rest" for 15 to 30 minutes after each 45 minutes to one hour of sitting or second physician's opinion that plaintiff could sit for only two to three hours "intermittently" during 8 hour day). Although Plaintiff does not address specifically[4] the ALJ's omission of the RFC limitation in "her upper extremities in her push/pull abilities," (R. 14) from the hypothetical to the VE, the ALJ should include every limitation that he finds applicable in the RFC finding (if not otherwise addressed by a prior SSR).

---

[3]This ruling moots Plaintiff's challenges to the VE's testimony about the impact of the "employer accommodation" of a "sit/stand option" (as opposed to "frequent rest periods") on the particular positions he gave in responsive to the ALJ's incomplete hypothetical.

[4]Plaintiff mentions it in passing with a list of other limitations that were omitted, but does not make any specific argument of the impact inclusion of such limitation might have had on the VE testimony.  Doc. 11 at 9.

Plaintiff's second major challenge to the ALJ's reliance on the VE's testimony is that ALJ's failure to inquire of the VE whether his testimony conflicted with the DOT.  Plaintiff cites SSR 00-4p, which requires that "before relying on VE or VS evidence to support a disability determination or decision" the ALJ is required to obtain a reasonable explanation for any conflicts between occupational evidence provided by VE and information in the DOT and explain how the conflict was resolved.

Plaintiff cited *Leonard v. Astrue*, 487 F.Supp.2d 1333, 1339 (M.D. Fla. 2007), for the proposition that "pursuant to SSR 00-4p, when a conflict exists between a VE's testimony and the DOT, an ALJ must elicit a reasonable explanation for the conflict and his or her failure to do so can constitute reversible error." *Id*. (acknowledging, at the time of the decision, that the Eleventh Circuit had not addressed the requirements of SSR 00-4p) (citing *Estrada v. Barnhart*, 417 F.Supp.2d 1299, 1303 (M.D. Fla.2006)), *but see id.* at 1339 ("Nevertheless, 'Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'").

The Eleventh Circuit has very recently endorsed this direction to the ALJ, affirming the district court's subsequent decision after the remand – noting that the district court had previously instructed the ALJ on remand after concluding that the VE's testimony conflicted with the DOT and that the ALJ had "failed to elicit a reasonable explanation" for the discrepancy.  *Leonard v. Commissioner*, 2011 WL 165439, *2 (11th Cir. Jan. 19, 2011) (citing SSR 00-4p; 65 Fed. Reg. 75759 (Dec. 4, 2000)) ("Leonard II").  The court affirmed that "[w]hen an apparent conflict between the VE's testimony and the DOT arises, . . . the ALJ 'must elicit a reasonable explanation for the conflict before relying on the VE['s testimony].'"  The ALJ must also "[e]xplain . . . how any conflict that has been identified was resolved." *Leonard II*,  2011 WL 165439, *2

In this case, given the Court's reversal and remand of the decision to the ALJ to take testimony from the VE that aligns with the ALJ's specific RFC finding, the Court directs the ALJ to inquire of the VE once the VE testifies in response to an appropriate hypothetical, whether there is any conflict with the DOT and/or identify any alternative authority on which the VE relies to resolve any uncertainty on the issue.  *See* SSR 00-4p ("Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's experience in job placement or career counseling.").

## IV. CONCLUSION

The Court finds that the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence.  Accordingly, the Court **REVERSES and REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g), with direction to the ALJ for further proceedings including use of a VE with a complete hypothetical including the limitations set forth in his RFC finding, and conflict with the VE's authority (if any) as set forth above.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 7, 2011.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record